We don't have Rankin against System Solution of Kentucky. Mr. Patton. Good afternoon, Your Honors. My name is John Patton, Jr. and I am representing the appellant Systems Solutions of Kentucky or SSK. I'll refer him to SSK. SSA sounds like the Social Security Administration. I would Okay, then, then I'll use System Solutions. So we are a defendant in a product liability action. And the claim against us is that we negligently designed and installed a winch and a bridle system to remove cargo for DHL. And that's what they're known as DHL. The DHL was brought into the case as the employer of the plaintiff. A co-defendant put DHL on notice to preserve. Counsel, I have a question about appellate jurisdiction. This is an appeal from something that the district judge evidently believed would be a Rule 54B partial final judgment. Though the district judge never entered a partial final judgment and never mentioned Rule 54B, we've held that those are formalities that don't necessarily block appeal. But that it is important that such a judgment involve all claims against a single party. So my question for you is whether in light of the district court's order, DHL is 100% out of this case. That's correct. No, my question is something. A question can't be correct. Is it out or not? DHL is 100% out of the case. Okay, thank you. And that is the crux of this appeal. Judge, so after DHL was put on notice to preserve the products that are the subject of the plaintiff's action, subsequent to that, they notified the parties that they had lost the products. Before you get further with that, I take it that the way DHL originally came into the case was through some form of Rule 14 third-party practice. It was brought in as a third-party defendant? They were brought in as a third-party defendant under the Contribution Act. Under the Contribution Act. But as a matter of procedure in federal court, once you're in federal court, that would be Rule 14. Did the plaintiff ever attempt to bring any action against DHL or did the Workers' Compensation Act mean that that was not something that was going to happen at all? The Illinois Workers' Compensation Act acts as a complete bar to the plaintiff suing his employer. Right. So plaintiff never tries under third-party practice to bring an independent claim against DHL because a can't, because it's a matter of law. That is correct. Okay. So I understand your opponent's theory seems to be, or your, sorry, that your theory is that this settlement that gets DHL entirely out of the case was one in which you were not occupying a seat at the table and somehow you are still injured by this spoliation claim that in your effort to defend your client against the plaintiff. Is that right? Yes. Our third-party complaint had two counts. One under the Contribution Act to apportion fault among DHL and Systems Solutions. And the second count was for DHL's spoliation of the evidence harming our ability to defend the products that we put into DHL's loaning bank. So I had a similar appellate jurisdiction type question about this. The usual rule with indemnification claims is that they all belong in the same lawsuit as the primary claim so that there won't be conflicting findings of fact. Can we really tease these things apart enough to justify interlocutory review of just the, just your points at this point? Or do we need to find out if the plaintiff is going to win or lose anyway? And just tell me to take place in one proceeding. I think the Illinois Supreme Court and Boyd and the subsequent cases that are cited in our brief make it clear that a spoliation action and a product liability action is more appropriately brought in the same action so that the jury can not only hear the case against the defendant but also decide if they rule in favor of the plaintiff that the spoliation prevented the defendant from succeeding in their defense. No, I understand that part. But what I'm worried about is the other side of things. If you, despite the spoliation, and I understand from the record that there are some substitutes for the information that was lost, you know, what if you win? You know, then you wouldn't have any damage at all because of the loss of these materials and all of this would be much ado about nothing. Right. But obviously that's speculation as much as I feel. It is speculation but it might argue for keeping everything in one package in the And that's what I'm advocating. I'm advocating that you reverse Judge Coleman's decision to dismiss. No, wait, wait. Look, counsel, you're advocating that we decide a part of this case now even though that part of the case may turn out to be unimportant. That's what you're advocating. That's why Judge Boyd is asking the question she's asking. Right. And obviously being a product liability case and the Illinois case law, making it clear that the actual product itself is of utmost importance to present in the case, both for the plaintiff and the defendant. Now we don't have that product and the courts are clear that that can either harm the plaintiff and prove in their case or harm the product liability manufacturer in defending their case. What's a fact is the product is gone and it's gone for good. But what's a fact is we haven't had a chance to test the product and have experts in the position to defend a product liability action. And this is all because of DHL, after having been put on notice to preserve it, somehow loses it. The point I'm making is that our spoliation action is a separate and distinct action under Illinois law. And Judge Coleman, applying the Contribution Act, used the settlement by DHL to wrap in or fold in the spoliation action, which under the Illinois Contribution Act and under Boyd just simply can't be done. We have no objection to the contribution action being dismissed and waive the lien. But waiving the lien doesn't give under Illinois law the right to dismiss a separate and distinct action. For example, if I had an action against DHL for breach of contract for failure to provide us insurance and the contribution action, DHL can't waive their lien and dismiss my contract action. That's exactly what happened in this case with the spoliation action. And we believe that that was improperly dismissed. And we're asking for that to be put back into the case and let us proceed to trial with all tort feasers. And I'm going to reserve my time. I see I have 55 seconds left for a vote. Thank you, Mr. Patton. Mr. Coleman. Good morning, Your Honors. My name is John Coleman representing Defendant Third Party Appellee DHL. With all due respect, I believe that the record below demonstrates that Judge Coleman and the District Court clearly analyzed both the oral arguments and the case files. Mr. Coleman, you've heard two distinct jurisdictional questions asked. Yes. And they're our first order of business, so I would like you to address them. Well, respectfully, I believe that Rule 54B doesn't come into play in this particular case because the court had jurisdiction to analyze and rule upon a motion to dismiss the third party complaint based upon the concept of a good case. No, you're mistaken about that. This case wound up with a case with a number of parties, a plaintiff, a defendant, a third party plaintiff, and a third party defendant. And the rule is quite clear that until all claims of all parties have been resolved, there is no judgment that's appealable under 1291. There is an exception in Rule 54B. If it's suitable for Rule 54B treatment, the District Court can say, I've resolved a distinctive set of all claims against a certain party. But the problem is we don't see that analysis. And at least the jurisdictional question that's bothering me is, do we have something that really meets the criteria for a separate appeal of a distinctive part of the case? Well, I would respectfully suggest to the court that it does only insofar as, as Mr. Patton correctly states, Judge Coleman's order removed DHL from the lawsuit entirely. The case has continued without DHL up to this point in time, and as I understand it, successfully so. What we're looking at here is a particular dismissal, which we feel is based on the appropriate case law from the Illinois Supreme Court. Counsel, you're not addressing Judge Wood's concern, which is also one of my concerns, which completely drops out. There aren't any damages, right? So what we're being asked to do now is to decide whether a particular claim should be reinstated, even though it may not have anything to do with the bottom line of this litigation. And that leads one to wonder whether everything shouldn't wait until we have a bottom line. Wait in the sense of bringing DHL back into the lawsuit, Your Honor? No. Wait in the sense that once the district court enters a final judgment, anyone aggrieved by that judgment can appeal. So DHL sits off there on the sidelines because you've settled, but there's no interlocutory, at least as I would imagine things. That's the option I'm trying to talk about. There's no interlocutory appeal right now. We find out what happens in the case of Rankin's against SSK, and if it turns out that the spoliation issue can be shown to be prejudicial and SSK can't develop its case or whatever and the plaintiff wins, then there would be a complete appeal that could be taken. You would be defending your client just the way you're defending them, but we would know if this mattered at all. If SSK wins in the case that Rankin brings, then at least SSK hasn't been hurt by the spoliation, and plaintiff, to my knowledge, has not added a cross-claim for spoliation. So I don't know where that comes in from Rankin's, but it's the sense of the completeness of the adjudication of the matters before us and when is the right time to appeal. I'm at least not talking about your settlement. I'm really talking about the time for an appeal. And I understand that and respect that concern, Your Honor. I would respectfully suggest that if, in fact, that's the court's opinion, we're willing to abide by that. Okay. Well, good. You won't have any choice if that's the court's opinion. I agree with that, too, Your Honor. I think that the court needs to be aware of the fact that the history in this particular case clearly shows that, unlike typical spoliation cases, there is no question that anybody has as to how this incident happened and how the alleged defective product participated in it. The third-party plaintiff system solutions has been involved in this since day one, since 2019. They were involved in numerous inspections where they were able to take a look at the product, photograph the product, confirm the product's operation. In fact, they had so much information that they were able to file a third-party complaint against. Mr. Coleman, you're now making an argument on what would be the merits of a spoliation claim. That's not even the ground on which the district court resolved this case. The district court resolved this as barred by the Illinois Contribution Act, and that doesn't have anything to do with whether it would be a substantively good spoliation claim. If you're going to discuss the merits, please discuss the critical issue. Very well, Your Honor. I think that the critical issue here is how, if at all, system solutions would be harmed, and is the plaintiff harmed as well? And in this particular case, the plaintiff has— No, I think the question, as Judge Easterbrook just said, is does the Illinois Contribution Act encompass the settlement of the spoliation claim? Everybody agrees that the Illinois Contribution part of the settlement is fine. Nobody, as far as I can tell, is talking about that. But why does the spoliation claim fall under that any more than some ancillary breach of contract claim or slip and fall the day before? Why is that also covered? Well, respectfully, Your Honor, what happens here is that the plaintiff is equally harmed with the spoliation as the third-party plaintiff is. We negotiated directly with the plaintiff to— But you're forgetting the defendant. You're forgetting SSK. Are you saying that they're completely uninvolved with the spoliation claim? They had the same injury that the plaintiff does. And consequently, because there was separate money paid on the spoliation claim, it applies to the third-party plaintiff as well. I don't understand that since they didn't have any say. What, it was $87,500 for the, quote, remaining claims, which I gather is the spoliation claim. Correct. I'm not sure I'm following why the plaintiff situation is . . . why the plaintiff gets to speak for the defendant in this respect. That's usually not the way we do things. Understood. But respectfully, because the spoliation claim impacts both the plaintiff and the defendant third-party plaintiff for the same reason, namely that the product doesn't exist anymore, the plaintiff who settles with the— or negotiates with the third-party defendant is, in essence, suggesting to the court that they are waiving the same interest in claim that the third-party plaintiff has in this particular instance. So, the Contribution Act deals with contribution claims arising out of the same injury, and it's our position, and I believe Judge Coleman found that it was her position as well, that the spoliation claim, as it applies to the plaintiff, and the spoliation claim, as it applies to the third-party plaintiff, SSK, was the same injury. And consequently, even though the spoliation claim in Count 2 is identified as a spoliation claim and not a contribution claim, it is, in essence, a contribution claim. And consequently, the dismissal found by the judge should apply to both regardless of how they are titled. We would respectfully ask the court to affirm the district court's ruling below. Thank you. Anything further, Mr. Patton? Judge, briefly, in response to Your Honor's question to appellate counsel, there is just no way that you can state paying the plaintiff $87,000 to settle an entire spoliation action is doing a favor for the defendant. We are left holding the bag. We are left without a product, and we have to prove our case that our product wasn't effective. I don't know how you can make an argument paying the plaintiff money for their harm. And by the way, they never asserted harm. They never made a claim on spoliation. This all came about out of the sky blue when they waived their lien. But paying the plaintiff in no way, shape, or form discharges DHL's obligation to system systems, that's – they're a torque-feaser to us. And they certainly have not discharged that. With respect to the last question, with respect to the timing of this, all I can say is this, Your Honor. The Illinois Supreme Court said a single trier effect should decide both the product's action and the spoliation action. And we agree with that. And Judge Easterbrook, when you say what's the hurry, we have a two-year statute of limitations. And that has begun to run on March 19th, 2021. And I'm not sure – What conceivable bearing has a statute of limitations on this? You've already sued, so it's presumably either satisfied or not, depending on – Well, it's – Yes, I think we have the parties' positions in this appeal. The case is taken under advisement.